UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IBRAHIM SEERAR MAH, | CASE NO. C26-0037-KKE |
| Petitioner(s), | ORDER GRANTING HABEAS PETITION |
| v. | |
| ICE FIELD OFFICE DIRECTOR, | |
| Respondent(s). | |

Petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, asserting that his detention is unlawful and requesting either that the Court order that he is entitled to a bond hearing or order his immediate release. Dkt. No. 3. Petitioner also filed a motion for appointment of counsel. Dkt. No. 5. The Government[1] filed its return on January 26, 2026, arguing that it is entitled to detain Petitioner without the opportunity for release on bond, but that if the Court disagrees, the appropriate remedy is an order to hold a bond hearing. Dkt. No. 7.

Because the Court finds that Petitioner has established that his detention is unlawful, the Court will grant the habeas petition and deny the motion to appoint counsel as moot.

---

[1] This order refers to Defendant United States Immigration and Customs Enforcement ("ICE") Field Office Director as "the Government."

ORDER GRANTING HABEAS PETITION - 1

## I.   BACKGROUND

Petitioner is a citizen of Somalia who arrived in the United States seeking asylum in March 2023. Dkt. No. 8 ¶ 4. He crossed the border not at a port of entry and without valid documents, and was detained shortly thereafter. *Id*. United States Border Patrol paroled Petitioner into the United States for the purpose of criminal prosecution, and the United States Marshal took custody of Petitioner. *Id*.

In April 2023, Petitioner was convicted of violating 8 U.S.C. § 1325 (improper entry to the United States) in the United States District Court for the District of North Dakota and sentenced to 24 days of incarceration with credit for time served. Dkt. No. 9-1. Upon release, Petitioner was instructed to check in with ICE. Dkt. No. 8 ¶ 5.

In May 2023, Petitioner visited an ICE office, where he was issued a notice to appear, charging him as inadmissible and removable under 8 U.S.C. § 1182(a)(6)(A)(i). Dkt. No. 9-2. ICE then detained Petitioner until he was released on an order of supervision in August 2023. Dkt. No. 8 ¶¶ 6–7; Dkt. Nos. 9-3, 9-4, 9-5. He enrolled in an Alternative to Detention ("ATD") program, imposing certain conditions of release. *Id*. ¶ 7.

In April 2025, an immigration judge denied Petitioner's requests for relief from removal and ordered him removed to Somalia. Dkt. No. 8 ¶ 8. Petitioner appealed this order to the Board of Immigration Appeals, and his appeal remains pending. *Id*. ¶ 9.

In September 2025, ICE detained Petitioner when he appeared for an ICE check-in, due to alleged ATD violations. Dkt. Nos. 9-6, 9-7. Petitioner had a bond hearing scheduled for January 23, 2026 (Dkt. No. 8 ¶ 12), but "on information and belief" of the Government's counsel, Petitioner withdrew the bond hearing request at some point (*see* Dkt. No. 7 at 6) and filed a habeas petition on January 5, 2026. Dkt. No. 1.

For the following reasons, the Court finds that the Government's arrest and re-detention of Petitioner without notice of the alleged ATD violations or an opportunity to be heard on them violates his constitutional right to due process. Accordingly, the Court will grant the habeas petition.

## II.      ANALYSIS

Federal courts have authority to grant writs of habeas corpus to an individual in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). In this case, Petitioner contends that his re-detention violates the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. CONST. AMEND. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether an administrative procedure provides the process constitutionally due

> generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id*. at 335.

ORDER GRANTING HABEAS PETITION - 3

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews'* three-part test applies in "the immigration detention context."  53 F.4th 1189, 1206–07 (9th Cir. 2022).  District courts have applied the *Mathews* test in similar circumstances since then.  *See, e.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025).  The Court will consider each *Mathews* factor to determine whether Petitioner's re-detention comports with constitutional due process requirements.

**A.      Petitioner Has a Protected Interest in His Liberty.**

Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).  That Petitioner was arrested and remains in custody months later undoubtedly presents a deprivation of Petitioner's interest in his liberty.

Although the Government's return contends that Petitioner falls within the mandatory detention scheme under 8 U.S.C. § 1225(b) (Dkt. No. 7 at 1–6), Petitioner's status as a person who has been living in this country for nearly three years counsels against this expanded view of the Immigration and Nationality Act as amended.  *See, e.g.*, *Escobar Salgado v. Mattos*, __ F. Supp. 3d __, 2025 WL 3205356, at *20 (D. Nev. Nov. 17, 2025) ("By subjecting noncitizens like Petitioners to mandatory detention, despite their significant due process rights as individuals present in the U.S., with no consideration of their deep financial, community, and familial ties in the country, the government has proffered an interpretation of a federal statute that engenders constitutional issues." (citation modified)).  "The overwhelming majority of courts to address the issue have agreed that Section 1226(a), rather than the mandatory detention provision of Section 1225(b)(2)(A), applies to a noncitizen in Petitioner's position who has resided in the United States for many years." *Aquino v. LaRose*, No. 25-cv-2904-RSH-MMP, 2025 WL 3158676, at *3 (S.D. Cal. Nov. 12, 2025) (collecting cases).  The Government's interpretation of § 1225(b) is unpersuasive when the statutory scheme is read as a whole, when this subsection is read in

ORDER GRANTING HABEAS PETITION - 4

conjunction with its implementing regulations, and when the subsection is read against the backdrop of shifting agency pronouncements. *See, e.g.*, *Llanes Tellez v. Bondi*, No. 25-cv-08982-PCP, 2025 WL 3677937, at *6–8 (N.D. Cal. Dec. 18, 2025).

For these reasons, the Court finds that Petitioner is properly detained under Section 1226(a) rather than Section 1225(b). This conclusion is consistent with the Government's earlier actions in this case (releasing Petitioner on an order of supervision), as well as its more recent actions (scheduling a bond hearing). Accordingly, the Court rejects the Government's limited, boilerplate arguments to the contrary. *See* Dkt. No. 7 at 2–6.

Under the circumstances of this case, the Court finds that Petitioner's interest in his liberty is constitutionally protected. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("[I]ndividuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty."). Accordingly, the first *Mathews* factor favors Petitioner.

**B.    The Risk of Erroneous Deprivation of Liberty is High.**

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest, and here, the Court finds a high risk of erroneous deprivation of Petitioner's liberty interest in the absence of a hearing.

As described earlier in this order, Petitioner was arrested and detained during a check-in appointment based on alleged ATD violations, many of which occurred months earlier. *See* Dkt. No. 8 at 6. The Government states that ICE revoked Petitioner's order of supervision in light of these violations, although it acknowledges that it cannot locate "paperwork memorializing" the revocation. Dkt. No. 7 at 6 n.3. It is undisputed that Petitioner did not receive notice or an opportunity to be heard on these alleged violations before the order of supervision was revoked and he was re-detained.

ORDER GRANTING HABEAS PETITION - 5

The absence of procedural safeguards leads to a high risk of an erroneous deprivation of Petitioner's liberty, as exemplified by the Government's inability to produce, even months later, documentation supporting the revocation of Petitioner's release. Accordingly, the Court finds that the second *Mathews* factor favors Petitioner. *See Doe*, 787 F. Supp. 3d at 1094.

**C.     The Government Interest in Civil Detention Without a Hearing Is Low.**

In the final *Mathews* factor, the Court considers the Government's interest in re-detaining Petitioner without a hearing.

The Court finds that the Government's interest in re-detaining non-citizens previously released without a hearing is "minimal": any administrative or financial burdens in providing Petitioner a hearing are far outweighed by the risk of erroneous deprivation of the liberty interest at issue. *See, e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). That many of Petitioner's alleged violations occurred months before they were acted upon undermines any suggestion that the Government's interests must be satisfied immediately or that the cost of procedural safeguards would be insurmountable. The third *Mathews* factor therefore favors Petitioner.

Based on this review of the *Mathews* factors, the Court finds that the Petitioner's liberty interest in his continuing release from custody is entitled to constitutional protections of due process, and that having received no process related to his re-detention, Petitioner's constitutional rights have been violated.

### III.     REMEDY

Having determined that Petitioner's re-detention violates his constitutional right to due process, the Court concludes his detention is unlawful and will grant his habeas petition. The Court must now determine the appropriate remedy.

ORDER GRANTING HABEAS PETITION - 6

"In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013). "Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and justice require." *Id*. (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)). "Declaratory and injunctive relief are proper habeas remedies." *Perera v. Jennings*, 598 F. Supp. 3d 736, 742 (N.D. Cal. 2022).

Here, the Court finds that the appropriate remedy for Petitioner's unconstitutional detention is a bond hearing, as the Government concedes that if the Court finds (as it did) that Petitioner is properly detained under Section 1226(a), rather than Section 1225(b), he is entitled to a bond hearing. *See* Dkt. No. 7 at 6. Thus, the Court will require the Government to provide Petitioner with a bond hearing that complies with the requirements set forth in *Singh v. Holder*, 638 F.3d 1196 (2011).

### IV.    CONCLUSION

For these reasons, the Court GRANTS Petitioner's petition for a writ of habeas corpus. Dkt. No. 3. Petitioner's motion for appointment of counsel is denied as MOOT. Dkt. No. 5.

The Government is ORDERED to conduct, no later than February 19, 2026, a bond hearing before an immigration judge in compliance with *Singh v. Holder*, 638 F.3d 1196 (2011). As an alternative to a bond hearing, the Government may immediately release Petitioner with the same conditions of supervision that applied before he was detained in September 2025.

The Government shall file a declaration no later than February 20, 2026, confirming compliance with this order.

Dated this 5th day of February, 2026.

Kymberly K. Evanson
United States District Judge

ORDER GRANTING HABEAS PETITION - 7